UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MEDALLION HOMES GULF COAST, INC.,

        Plaintiff,

v.                                Case No. 8:14-cv-3117-T-33JSS

TIVOLI HOMES OF SARASOTA, INC.,
NICOLE DUKE, MICHAEL DUKE,
JASON KUBISIAK, and START TO
FINISH DRAFTING, L.L.C.,

        Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants Tivoli Homes of Sarasota, Inc., Nicole Duke, Michael Duke, Jason Kubisiak, and Start to Finish Drafting, L.L.C.'s Motion for Summary Judgment (Doc. # 29), filed on August 14, 2015. On August 25, 2015, Plaintiff Medallion Homes Gulf Coast, Inc. filed a Response in Opposition to the Motion (Doc. # 30), to which Defendants replied on September 4, 2015. (Doc. # 37). The Court grants the Motion as explained below.

## I.  Background

### A.  The Dukes' Failed Relationship with Medallion

Michael and Nicole Duke are a married couple who reside in "the Hammocks," a deed restricted community in Sarasota, Florida. (Nicole Duke Dep. Doc. # 31 at 12). In 2012, the Dukes became interested in downsizing, but still wanted to live in the Hammocks community. In February of 2013, the

Dukes purchased a vacant lot with an address of 7988 Megan Hammock Way, Sarasota, next door to the property that they owned at 7992 Megan Hammock Way, Sarasota, Florida.  After reviewing advertisements from various builders, the Dukes visited a Medallion model home.  The Dukes expressed an interest in the "Santa Maria VIII," a Medallion model home. (Id. at 15). The Dukes put down a $10,000.00 payment for Medallion to construct a modified version of the Santa Maria VIII at 7988 Megan Hammock Way, Sarasota, Florida. (Id. at 16).

However, the Hammocks required Medallion to come before an Architectural Review Committee prior to constructing the home.  (Id. at 17-18). A meeting was set; but, Medallion's representative failed to appear.  (Id. at 18).  Mrs. Duke was "extremely upset" and felt it was "extremely rude" for the Medallion representative to miss the meeting.  (Id. at 26). Ultimately, after a "formal vote," the Hammocks Architectural Review Board forever barred Medallion from building a home in the Hammocks community. (Id. at 22).  Shortly thereafter, Medallion returned the $10,000.00 deposit to the Dukes. (Peter Logan Dep. Doc. # 35 at 54).

B.   **The Dukes Contract with Tivoli**

The Dukes still desired to downsize their residence,

especially as Mr. Duke suffered from multiple strokes, which left him impaired. (Nicole Duke Dep. Doc. # 31 at 26-27). Another Hammocks resident recommended that the Dukes consider Tivoli Homes of Sarasota, Inc. as their builder. (Id. at 28). Soon thereafter, the Dukes entered into a contract with Tivoli for the construction of their new home. (Id. at 33-34). During her deposition, Mrs. Duke admitted that she brought the marketing brochure of the Medallion Santa Maria VIII home to her meetings with Tivoli, however, Tivoli refused to utilize those materials. (Id. at 34). Instead, Tivoli provided Mrs. Duke with various Tivoli floor plans and made it clear that Tivoli would not "build from someone else's plan." (Id. at 37-42).

Tivoli retained Start to Finish Drafting, LLC, an entity owned by Jason Kubisiak, to draft building plans for the new, custom home for the Dukes. (Id. at 31-32). Kubisiak explained that in his meetings with the Dukes, Mrs. Duke referred to the Medallion marketing materials for the Santa Maria VIII, to Tivoli floor plans, and to other materials she retained from past building projects (as Mrs. Duke had previously worked with builders to construct prior residences). (Kubisiak Dep. Vol. I Doc. # 33 at 30; Kubisiak Dep. Vol. II Doc. # 34 at 38).

3

After multiple drafts, Kubisiak completed a final version of the building plans, and the Dukes' home was constructed. (Kubisiak Dep. Vol. II Doc. # 34 at 38). On December 15, 2014, Medallion filed the present copyright infringement action against Tivoli, Start to Finish Drafting, Kubisiak, and the Dukes. (Doc. # 1). At this juncture, Defendants jointly move for the entry of summary judgment in their favor. The motion is ripe for the Court's review.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law.

4

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).  The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.  Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial."  Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor.  Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).  If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment.  Samples ex rel. Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel

Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).  However, if the non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required.  Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981), cert. denied, 456 U.S. 1010 (1982).

**III. <u>Analysis</u>**

To support a claim of copyright infringement, Medallion must prove its ownership of the copyright to the works and copying by Defendants. Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 824 (11th Cir. 1982).  In Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc., 785 F.2d 897, 903-04 (11th Cir. 1986), the court explained that "copying by defendant" can be proved by establishing a defendant's access to the copyrighted work and that the defendant's work is substantially similar to the plaintiff's work.

Medallion indicates that it "is the owner of a technical drawing and architecture plan entitled 'Santa Maria,' created in 2003" and that "Medallion received from the Register of Copyrights a Certification of Registration, registration number V Au-601-492 and V Au601-495 for the Santa Maria technical drawings and architectural plan." (Doc. # 1 at ¶¶ 8,

6

13).  Defendants do not challenge Medallion's ownership of the copyright or the validity of the copyright. (Doc. # 37 at 3). In addition, it is not contested that Defendants had access to the Santa Maria VIII advertising brochure. (Doc. # 29 at 5). Thus, the Court will focus its attention on whether the Dukes' home is substantially similar to Medallion's copyrighted architectural work in the Santa Maria VIII.

In determining substantial similarity in a copyright infringement action involving architectural works, the Eleventh Circuit has instructed "not all copying constitutes infringement, however, and therefore we have emphasized that the substantial similarity analysis must focus on similarity of expression, i.e., material susceptible of copyright protection." Intervest Constr., Inc. v. Canterbury Estate Homes, Inc., 554 F.3d 914, 921 (11th Cir. 2008).  The protection provided to compilations, such as floor plans, is "thin." Id.  And, "the variety of ways a two-story rectangle can be divided into three bedrooms, two baths, a kitchen, a great room or living room, closets, porches, etc. is finite." Howard v. Sterchi, 974 F.2d 1272, 1275 (11th Cir. 1992). Thus, with respect to architectural compilations, "modest

7

dissimilarities are more significant than they may be in other types of art works." Id.

Furthermore, "A court can find that floor plans are visually similar with the same general layout yet find their dissimilarities significant." John Alden Homes, Inc. v. Kangas, 142 F. Supp. 2d 1338, 1345 (M.D. Fla. 2001). That was the case in the Intervest case and is also the case here. Although there are many similarities between the Dukes' home and the Santa Maria VIII, the dissimilarities, which are discussed in detail below, are dispositive. See, e.g., Bldg. Graphics, Inc. v. Lennar Corp., 866 F. Supp. 2d 530, 544 (W.D.N.C. 2011)("a court can find designs to be visually similar with the same general layout and nonetheless find the dissimilarities significant enough to preclude a finding of infringement."); Intervest, 554 F.3d at 916, 921 (describing the common elements across the two floor plans at issue as four bedrooms, a two-car garage, living room, dining room, family room, foyer, kitchen, two bathrooms, a nook, and a porch, but holding that no reasonable jury could find the two floor plans "substantially similar," even though each had a similar overall layout.).

In this case, Kubisiak, the individual who created the building plans for the Dukes' residence, provided detailed deposition testimony highlighting some of the key differences between the Dukes' residence and Medallion's Santa Maria VIII. He has also provided an affidavit with further analysis on this point. It is not necessary to repeat each and every difference itemized by Kubisiak, but the Court notes some salient points of comparison.

To begin, the Dukes' home is a "mirror image" of the Santa Maria VIII, such that "the plans have an opposite layout" with all of the "rooms on the opposite side of the hose." (Kubisiak Aff. Doc. # 29 at 17).  In addition, the Dukes' living area is 2,953 square feet, while the Santa Maria VIII's living area is 2,615 square feet. (Id.).  Likewise, the Dukes' garage is 559 square feet, as compared to the Santa Maria VII's garage, which is 724 square feet. (Id.).  In addition, a room by room comparison reveals other important differences.  In the master suite bedroom, the Dukes include two windows, a pocket door entrance, and two hinged closet doors, while the Santa Maria VIII only has one window, utilizes a hinged entrance door, and features four double bifold closet doors. (Id.).  The master suit bathroom in the

Dukes' residence also differs from the Santa Maria VIII with respect to the placement of the bathroom fixtures and the types of doors utilized. (Id. at 18).

Moving on, the Court notes that the Santa Maria VIII includes two separate garage areas (a one car garage and a separate two car garage), while the Dukes' residence only features a two car garage. (Id. at 18-19). Rather than having two separate garage spaces, the Dukes instead include a hobby room that is a finished, air conditioned space with a niche area directly outside of the entrance door and includes three arched windows. (Id. at 18). In addition, while both homes similarly feature a two car garage, the Court notes that the those garages are not the same size, and differ with respect to the inclusion of attic access at the Dukes' residence, and the number and placement of windows and doors. (Id. at 18-19).

The Court's analysis of the front porch and front door area also shows various stylistic and architectural differences. For their front entrance, the Dukes utilize a 54" round transom window over 2'8" outswing double doors, while the Santa Maria VIII includes a double door with no mention of a transom window. (Id. at 19). In addition, the

Dukes' porch does not extend to the garage and includes two pillars as compared to the Santa Maria VIII, which extends to the garage and includes three pillars. (<u>Id.</u>).   These differences extend to the great room, breakfast nook, den, and dining room, as the Dukes utilize different ceiling types and ceiling heights than the Santa Maria VIII. (<u>Id.</u> at 20). Further, the Dukes include other details, such as plant ledges, more doors, and different window types. (<u>Id.</u>).

The Dukes' kitchen also differs from the Santa Maria VIII kitchen with respect to the layout of the cabinets, the inclusion of a custom kitchen pantry, the location of the dishwasher, and the placement of the refrigerator. (<u>Id.</u>). Similarly, the guest bedrooms and bathrooms were designed by the Dukes to suit their individual needs and differ from the Santa Maria VIII.   For example, the Dukes' pool bathroom includes a linen closet, while the linen closet featured in the Santa Maria VIII is located outside of the bathroom in a hallway. (<u>Id.</u> at 21).   In addition, a comparison of the two homes reveals that the toilets and other bathroom fixtures are placed in different locations within the pool bathrooms. (<u>Id.</u> at 21).   Likewise, the Dukes' guest bathroom contains two sinks, while the Santa Maria VIII's guest bathroom only

contains one sink. (<u>Id.</u> at 22). The guest bedrooms in the Dukes' residence also include features such as a bay window, a custom niche, pocket doors, additional closets, and shelving that is not included in the Santa Maria VIII. (<u>Id.</u> at 22).

The Court determines that these differences, among others, are substantial. The Court acknowledges that Medallion has provided the affidavit of George Merlin, an architect. Notably, Merlin indicates: "It is my opinion that the Tivoli final construction drawing is substantially architecturally similar to the Medallion Santa Maria VIII copyrighted drawings." (Doc. # 30-1). But Merlin renders this conclusion after acknowledging specific differences between the two homes, such as the Dukes' addition of a bay window to one guest room, "a slight change at the front covered entrance, and converting the single car garage into a hobby room." (<u>Id.</u> at 3). Merlin also takes account of the different placement of the kitchen cabinets at the Dukes' home as well as of the fact that "the shower and toilet are interchanged with each other" when comparing the Dukes' master bath and the Santa Maria VIII master bath. (<u>Id.</u>). Merlin also takes note of variations made by the Dukes concerning entry ways. (<u>Id.</u>). Merlin's statement that the homes are substantially similar is

belied by his own description of the many differences between the two homes and by the record as a whole.

Peter Logan, Medallion's Corporate Representative, likewise glossed over the differences presented between the Dukes' home and the Santa Maria VIII. During his deposition, counsel for Defendants pressed Logan to provide specific details regarding the similarities between the Dukes' home and the Santa Maria VIII. Despite being given multiple opportunities to provide a specific answer, Logan generally indicated: "The rooms were laid out the same." (Logan Dep. Vol. II Doc. # 36 at 15).

In this case, there are more than "modest dissimilarities" between the protectable elements of the Santa Maria VIII and the Dukes' residence.[1] Howard, 974 F.2d at 1276. The Court finds that, at the level of protected expression, the differences between the designs are so significant that no reasonable fact finder could determine that the works were substantially similar. The Court accordingly grants Defendants' Motion for Summary Judgment.

Accordingly, it is

---

[1] "Spacial depictions of rooms, doors, windows, walls, etc." are not protected. Intervest, 554 F.3d at 920. "[O]nly the original, and thus protected arrangement and coordination of spaces, elements and other staple building components should be compared." Id. at 919.

13

**ORDERED, ADJUDGED,** and **DECREED:**

(1)   Defendants Tivoli Homes of Sarasota, Inc., Nicole Duke, Michael Duke, Jason Kubisiak, and Start to Finish Drafting, L.L.C.'s Motion for Summary Judgment (Doc. # 29) is **GRANTED.**

(2)   The Clerk is directed to enter Judgment in favor of Defendants and thereafter to **CLOSE THE CASE.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>5th</u> day of November, 2015.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE


Copies:  All Counsel of Record

14